IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>BRETT DANNY SHUMWAY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND DENYING MOTIONS TO SUPPRESS<br><br><br><br>Case No. 2:10-CR-926 TS |

This matter is before the Court on Defendant Brett Danny Shumway's Objections to the Magistrate Judge's Report and Recommendation. For the reasons discussed below, the Court will overrule Defendant's Objections, adopt the Report and Recommendation issued by the Magistrate Judge, and deny Defendant's Motions to Suppress.

1

I. PROCEDURAL BACKGROUND

Defendant filed two Motions to Suppress on January 21, 2011. In one Motion, Defendant sought to suppress evidence obtain from the search of his vehicle (the "Search Motion").[1] In the other, Defendant sought to suppress statements he made (the "Statement Motion").[2]

The matter was referred to the Magistrate Judge pursuant to 28 U.S.C. 636(b)(1)(B).[3] The Magistrate Judge held an evidentiary hearing on the Motions on March 2, 2011.[4] The parties then briefed Defendant's Motion, with Defendant's Memorandum in Support being filed on May 23, 2011,[5] and the government's Response being filed on June 22, 2011.[6]

The Magistrate Judge issued his Report and Recommendation on July 5, 2011.[7] The Magistrate Judge made detailed findings of fact and, after reviewing the relevant case law, recommended that Defendant's Motions to Suppress be denied. Defendant filed an Objection to

---

[1] Docket No. 43.

[2] Docket No. 44.

[3] Docket No. 45.

[4] Docket No. 59.

[5] Docket No. 79.

[6] Docket No. 82.

[7] Docket No. 86. The Report and Recommendation was originally filed at Docket No. 85, but was re-filed at Docket No. 86 because certain pages were missing from the original filing.

the Magistrate Judge's Report and Recommendation on July 19, 2011,[8] and the government filed its Response on July 28, 2011.[9] This matter is, therefore, ripe for decision.

Defendant's Objection takes issue with certain findings of fact and conclusions of law in the Report and Recommendation in relation to the Search Motion. Defendant's Objection, however, does not dispute any portion of the Report and Recommendation related to the Statement Motion. As a result, any objection to the Report and Recommendation as it relates to the Statement Motion is waived.[10] Therefore, the Court will deny the Statement Motion, as recommended by the Magistrate Judge, without further discussion.

## II. FACTUAL BACKGROUND

With two exceptions, Defendant does not object to the Magistrate Judge's thorough findings of fact. The Court will, therefore, adopt the Magistrate Judge's findings of fact, with the exception of those two findings objected to by Defendant, which will be discussed in further detail below. Rather than repeating what has already been presented by the Magistrate Judge, the Court will only recount those facts which are necessary for the resolution of Defendant's Objection.

At approximately 11:00 a.m. on September 22, 2010, Officer Lefevre, with the St. George Police Department, was notified by dispatch that a bank robbery had occurred.[11] Dispatch

---

[8] Docket No. 87.

[9] Docket No. 88.

[10] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

[11] Docket No. 62, at 7-8.

described the suspect as possibly black or dark-skinned, wearing a blue plaid shirt.[12] Dispatch also related that the suspect might have also been wearing a white shirt with some discoloration on it, possibly due to a dye pack exploding.[13]

Officer Lefevre positioned his patrol car at Exit 6 on Interstate 15 in order to assist with surveillance.[14] From this location, the officer observed a vehicle entering the southbound Interstate 15 on-ramp.[15] The passenger of the vehicle was a dark-skinned male wearing a dark colored shirt and the driver of the vehicle appeared to be wearing a white shirt with some discoloration.[16]

Upon seeing the officer, both individuals appeared nervous. Officer Lefevre described them as having an "oh-my-gosh-I'm-caught look."[17] Their mouths were open and they stared at the officer for a longer amount of time than most people do.[18] The individuals gave the officer a

---

[12]*Id*. at 12.

[13]*Id*. at 12-13.

[14]*Id*. at 9.

[15]*Id*. at 13, 17.

[16]*Id*.

[17]*Id*. at 14.

[18]*Id*.

4

"long, cold, hard stare."[19] Then, the individuals looked away and kept staring down the road and did not look back, which the officer found to be suspicious.[20]

The officer also noted that the time between the initial report and seeing the vehicle as consistent with the time it would take to drive from the scene of the robbery to the location of the officer.[21] Given this, as well as the fact that the individuals somewhat matched the description of the suspect, and the fact that the individuals appeared overly nervous, Officer Lefevre decided to follow them onto the freeway.[22]

While Officer Lefevre followed the vehicle, he noticed that the occupants kept looking back toward him.[23] The passenger kept turning over his shoulder to look at the officer and the driver was constantly looking in his mirrors.[24] Officer Lefevre then observed what he believed to be the passenger removing his shirt and throwing it in the back, possibly attempting to distance himself from the description given by dispatch.[25] The officer further noted strange movements

---

[19]*Id*.

[20]*Id*. at 16.

[21]*Id*. at 16, 19-20.

[22]*Id*. at 16.

[23]*Id*. at 17.

[24]*Id*.

[25]*Id*. at 18.

by the vehicle. The driver made four unusual and seemingly unnecessary lane changes in a short distance.[26]

Officer Lefevre then initiated a traffic stop to investigate further.[27] This stop occurred near exit 4, approximately two miles south of where the officer first observed the vehicle.[28]

III. DISCUSSION

As to those portions of the Report and Recommendation to which Defendant has objected, the Court reviews the Report and Recommendation *de novo*.[29]

> In order to conduct a de novo review a court "should make an independent determination of the issues . . . ; [it] 'is not to give any special weight to the [prior] determination' . . . ." "The district judge is free to follow [a magistrate's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew."[30]

Defendant challenges two of the Magistrate Judge's findings of fact. The Magistrate Judge found that "[b]oth occupants matched, in some way, the suspect descriptions" or "were

---

[26]*Id*. at 18.

[27]*Id*. at 20-21.

[28]*Id*. at 21-22.

[29]28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3).

[30]*Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. First City Nat'l Bank*, 386 U.S. 361, 368, (1967); *Mathews v. Weber*, 423 U.S. 261, 271 (1976)).

consistent with armed robbery suspect descriptions."[31] The Magistrate Judge further stated that the occupants of the vehicle were "leaving town on an interstate."[32]

The Court will first address Defendant's objection to the Magistrate Judge's finding that the occupants of the vehicle either matched, in some way, or were consistent with the description of the robbery suspect. As set forth above, dispatch relayed information that the suspect was possibly black or dark-skinned and wearing a blue plaid shirt. Dispatch also relayed information that the suspect might have been wearing a white shirt with some discoloration on it, possibly due to a dye pack exploding. Officer Lefevre testified that the passenger of the vehicle was a dark-skinned male wearing a dark colored shirt and the driver of the vehicle appeared to be wearing a white shirt with some discoloration.

This testimony is fully consistent with the Magistrate Judge's finding that the occupants either matched to some degree or were consistent with the description of the suspect. Defendant takes issue with the fact that Officer Lefevre was only informed by dispatch that the suspect may be wearing a blue plaid shirt, but only observed a "dark" shirt and was unable to better observe the color or pattern. This, however, reads too much into the Magistrate Judge's finding and ignores the fact that Officer Lefevre was further told that the suspect may be wearing a white shirt with some sort of discoloration.

The Magistrate Judge did not conclude that the occupants of the vehicle exactly matched the description given, only that the individuals matched, in some way, the description given and

---

[31]Docket No. 86, at 13, 15.

[32]*Id*. at 15.

that their appearance was consistent with the description of the suspect. As set forth above, this is supported by the record. Officer Lefevre identified the passenger as a dark-skinned individual wearing a dark shirt. While the officer could not clearly identify the color of the shirt or the pattern, it was not necessary to do so. The officer also had a description of a suspect wearing a white shirt with a discoloration, which matched the clothing of the driver. While it is true that neither suspect exactly matched the description given by dispatch, this was not required and the Magistrate Judge did not so conclude. Further, it was not only the fact that the occupants of the vehicle somewhat matched the description of the suspect that Officer Lefevre decided to conduct the stop of the vehicle. There were a number of other factors, which will be discussed below, that provided a basis for the stop. Therefore, this objection will be overruled.

Defendant next objects to the Magistrate Judge's finding that the occupants of the vehicle were "leaving town." The evidence presented at the evidentiary hearing revealed that Officer Lefevre first observed the vehicle near exit 6 in St. George. The officer followed the vehicle traveling southbound on Interstate 15. The traffic stop was initiated near exit 4. The Court can take judicial notice that St. George is located in the southern part of Utah, near the border with Arizona and Nevada. The Court can take further judicial notice that interstate exists in Utah are numbered in accordance with the respective distances from the border. As stated, the occupants were traveling southbound on Interstate 15 and traveled to within four miles of the Utah state border before being stopped by Officer Lefevre. From this information, it was reasonable for the Magistrate Judge to infer that the occupants of the vehicle were leaving town. Even if this

finding was not supported by the record, the Magistrate Judge's Report and Recommendation was not dependent on this fact. Therefore, the Court will overrule this objection.

Defendant next objects to three conclusions of law: (1) that Officer Lefevre possessed reasonable suspicion to conduct a stop of the vehicle; (2) that the nervousness of the occupants of the vehicle was excessive given the circumstances; and (3) that the occupants' nervous behavior "as a whole and in context" supported a finding of reasonable suspicion justifying the stop.

The Court will first address the issues relating to the nervousness of the occupants of the vehicle. Defendant objects to the finding that the occupants of the vehicle were excessively nervous. Defendant phrases this as a challenge to a legal conclusion, but it is, in fact, a challenge to a finding of fact. The Court concludes that the Magistrate Judge's finding that the occupants of the vehicle were excessively nervous is fully supported by the record. Officer Lefevre testified in detail about the nervous reaction of the occupants when they first noticed the officer and when he began to follow the vehicle. Officer Lefevre provided further testimony that the occupants of the vehicle appeared more nervous than the average motorist.[33] From this, the Magistrate Judge could properly find that the occupants exhibited excessive nervousness. Therefore, this objection will be overruled.

Defendant next challenges the Magistrate Judge's conclusion that "[c]onsidering the occupants' nervous behavior as a whole and in context, the Court finds they support a finding of reasonable suspicion justifying the traffic stop."[34] Defendant argues that this finding is erroneous

---

[33]Docket No. 62, at 46.

[34]Docket No. 86, at 15.

because "'[n]ervousness alone cannot support reasonable suspicion of criminal activity.'"[35] Defendant's objection, however, fails to appreciate the fact that the Magistrate Judge considered the occupants nervousness as one of many factors supporting a finding of reasonable suspicion. The Magistrate Judge's determination that reasonable suspicion existed did not rest on nervousness alone. Further, the Magistrate Judge correctly noted that nervousness is of limited significance, but is a factor to be considered in determining whether reasonable suspicion exists.[36] Therefore, Defendant's objection on this ground will be overruled.

Defendant finally challenges the Magistrate Judges' ultimate conclusion that reasonable suspicion existed to effectuate the traffic stop. "A traffic stop is a seizure within the meaning of the Fourth Amendment."[37] The Court analyzes such stops under the principles set out in *Terry v. Ohio*.[38] "To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'"[39]

---

[35]Docket No. 87 (quoting *United States v. Salzano*, 158 F.3d 1107, 1113 (10th Cir. 1998)).

[36]Docket No. 86, at 13-14 (quoting *United States v. Johnson*, 364 F.3d 1185, 1192 (10th Cir. 2004)).

[37]*United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995).

[38]*Id*. (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

[39]*Id*. (quoting *Terry*, 392 U.S. at 20).

"It is well settled that an investigative stop is justified where police officers have a reasonable, articulable suspicion that the detainee has been, is, or is about to be engaged in criminal activity."[40] "The presence of reasonable suspicion is not determined by any one factor, but by the totality of the circumstances."[41]

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.[42]

"Thus, as long as [the officer] has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is not involved in any illegality."[43]

Considering the totality of the circumstances, the Court finds that Officer Lefevre had reasonable suspicion to conduct the stop and the Magistrate Judge's conclusion in this regard was correct. There are a number of factors which support this conclusion. First, the occupants of the vehicle matched, to some degree, the description of the suspect given by dispatch. As discussed above, the occupants did not exactly match the description of the suspect, but certain similar elements were present. Second, the vehicle arrived at Officer Lefevre's location within the time frame consistent with a vehicle traveling from the area of the robbery to the location of the

---

[40] *United States v. Elkins*, 70 F.3d 81, 83 (10th Cir. 1995).

[41] *Id.* (quotation marks and citations omitted).

[42] *United States v. Tuter*, 240 F.3d 1292, 1296 n.2 (10th Cir. 2001).

[43] *Johnson*, 364 F.3d at 1194.

officer. Third, the occupants of the vehicle appeared excessively nervous. While nervousness is of little significance, it is something to consider under a totality of the circumstances. Fourth, the passenger's actions of appearing to remove his shirt, which would distance himself from the description of the suspect given by dispatch. Finally, the officer noted the unusual movement of the vehicle after he had begun to follow it. All of these factors, when considered together, were sufficient to provide a reasonable suspicion to conduct a traffic stop to conduct further investigation. Therefore, the Court will overrule Defendant's objection on this ground.

IV. CONCLUSION

It is therefore

ORDERED that Defendant's Objection to the Magistrate Judge's Report and Recommendation (Docket No. 87) is OVERRULED. It is further

ORDERED that the Magistrate Judge's Report and Recommendation (Docket Nos. 85 and 86) is ADOPTED IN FULL. It is further

ORDERED that Defendant's Motions to Suppress (Docket Nos. 43 and 44) are DENIED. It is further

ORDERED that the time from the filing of the Motions to Suppress—January 21, 2011—through the date of this Order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H).

The parties are directed to contact the Magistrate Judge to set this matter for further proceedings.

DATED   August 29, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge